UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| OPAL JEAN LENNIX | CIVIL ACTION |
| VERSUS | NO. 19-13671 |
| FEDEX GROUND PACKAGE SYSTEM, INC., ET AL. | SECTION "A" (2) |

**ORDER AND REASONS**

Before the Court is a **Motion for Summary Judgment (Rec. Doc. 17)** filed by the Defendant FedEx Ground Package System, Inc. ("FedEx"). The Plaintiff Opal Lennix opposes the motion. (Rec. Doc. 22). The motion, set for submission on August 19, 2020, is before the Court on the briefs without oral argument.

**I.     BACKGROUND**

FedEx hired Lennix on November 14, 2017 when she was 50 years old to be a part-time Package Handler at its St. Rose distribution facility. (Rec. Doc. 17-1, p. 8, Lennix's Deposition). The role of a FedEx Package Handler is to move packages that come into the facility from conveyors into the correct area for delivery. *Id*. at 29-31. There are six different "belts" where Package Handlers work, *id*. at 40, and they have two main functions, sorting and stacking. *Id*. at 29-31. Sorting involves pushing the incoming packages onto one of two sides of the belt, while stacking involves taking packages from the belt, scanning them, and placing them in areas where they can be loaded onto trucks. *Id*. at 30-31. Depending upon the volume of packages, some Package Handlers will only sort while others only stack. *Id*. at 70-71. At other times, all Package Handlers will be both sorting and stacking. *Id*.

In July 2018, Shanel Sede' became Lennix's new supervisor. *Id*. at 55. Lennix's troubles with Sede' began one morning when Lennix was not feeling well, and she asked another employee who was sorting if she could take her place for the day. *Id*. at 75-82. Sede' observed this switch and told Lennix she could not trade her duties and to instead return to

stacking. *Id*. at 76. Lennix and Sede' then "went back and forth" about her workload compared to other employees. *Id*. Lennix also asked if she could go home, but Sede' told her no. *Id*. After this exchange, Lennix decided to report this incident to Sede's supervisor, Olivia Tate. *Id*. at 76-78. However, before Lennix could reach Tate's office, Tate met her in the hallway and told her that: if she left, she would be forfeiting her job. *Id*. at 78. As a result, Lennix returned to work. *Id*.

In the weeks that followed this incident, Lennix claims that Sede' began harassing her about her scanning abilities. *Id*. at 91. For instance, Sede' instructed her to use a different scanning method than the one she used under her former supervisor. *Id*. at 92-93. Because of this disagreement over methodologies, Lennix claims that she was limited to only sorting and Sede' no longer allowed her to perform her stacking duties. *Id*. at 116-17.

Lennix's difficulties with Sede' then came to a head one busy morning when she was working on the back portion of the belt. Lennix described this incident by saying:

> I picked up a package to go back to the front with it because the packages were all over. [Sede'] got in my way and started raging at me. I asked her to move, because the package was pretty heavy and hefty, and she denied it. She stayed there for at least five minutes. I kept asking her, excuse me, excuse me. May I pass? And she wouldn't move . . . After I put the box down, yes. I put the box down right on the side of her feet. I was like, excuse me. [Sede' then] said, you can go home.[1]

Conversely, Sede' explained that her frustration with Lennix stemmed from her instructing Lennix multiple times to "move to the front of the belt and work on the packages in that area." (Rec. Doc. 17-3, p. 1, Sede's Declaration). However, Lennix claims that she never knew Sede' was talking to her. (Rec. Doc. 17-2, p. 96-97, Lennix's Deposition).

After this confrontation, Lennix went to Tate to report the incident, but Tate responded by saying that, "[w]ell, if that's the way the belt manager wants to handle her belt, then that's

---

[1] (Rec. Doc. 17-2, p. 96, Lennix's Deposition).

the way she wants to handle it." *Id*. Lennix then left work that day with the intention of reporting the situation to the company's HR director. *Id*. at 98-99. However, when she showed up the next day, Tate informed her that she was terminated. *Id*. at 99-100.

Lennix subsequently filed a Complaint against FedEx, Olivia Tate, Shenell Sede', and Bryan Shreckengost. She made the following three claims: (1) age discrimination, (2) disability discrimination, and (3) retaliation. After conducting discovery, FedEx filed a Motion for Summary Judgment. (Rec. Doc. 17).

The Court will now address the merits of FedEx's Motion.

## II. STANDARD OF REVIEW

### A. *Pro Se* Litigant

Because Lennix is proceeding *pro se*, the Court must construe her pleadings liberally. *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir.1995). However, "[t]he right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law." *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir.1981).

### B. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought." "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be . . . disputed must support the assertion by . . . citing to particular parts of materials in the record[.]). A fact is immaterial "if proof of its existence or nonexistence would affect the

outcome of the lawsuit under applicable law in the case." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

### III.    DISCUSSION

#### A. Age Discrimination

To make a claim for discriminatory treatment based on age, plaintiffs must allege that: (1) "they are within the protected class"; (2) "they are qualified for the position"; (3) "they suffered an adverse employment decision"; and (4) "they were replaced by someone younger or treated less favorably than similarly situated younger employees (*i.e.*, suffered from disparate treatment because of membership in the protected class)." *Leal v. McHugh*, 731 F.3d 405, 410-411 (5th Cir. 2013) (citing *Smith v. City of Jackson, Miss.*, 351 F.3d 183, 196 (5th Cir.2003)); *Maestas v. Apple, Inc.*, 546 F. App'x 422, 426 (5th Cir. 2013). "Because the ADEA (the Age Discrimination in Employment Act) prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class." *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996).

Lennix's age discrimination claim stems from FedEx allowing a younger employee to scan and stack, while she was relegated to only sorting. She supported this claim by stating: "[w]e had a younger female there that it was like a discrimination, as far as age-wise, because, the young lady, she wasn't able to pick up the packages, she wasn't able to do this, and she was scanning [one] morning." (Rec. Doc. 17-2, p. 75, Lennix's Deposition). However, the younger employee was allowed to scan instead of Lennix because: "[she] wasn't large enough [to sort. S]he was too small, she wasn't strong enough to be picking up the packages, and this was back and forth." *Id*.

Here, the Court finds that FedEx did not discriminate against Lennix by allowing a younger co-worker to scan and stack instead of her. More specifically, Lennix failed to show that she suffered from disparate treatment because of her membership in a protected class.[2] Instead, Lennix was relegated to only sorting because Cede' did not approve of her scanning method. As Lennix stated in her deposition, "[a]s far as an incident about scanning, I was down on the floor doing the scanning and [Cede'] might have harassed me at least 35, 40 minutes, telling me I wasn't scanning correctly . . . I got written up for not scanning correctly, a 97 out of 100 . . . I wrote a disagreement note on the write-up . . . I did acknowledge the write-up, and I disagreed on it." (Rec. Doc. 17-2, p. 91, Lennix's Deposition). Thus, the Court finds that Lennix's relegation to only sorting was because of her inability to scan properly, and the Court concludes that this relegation was unrelated to Lennix's age. Further, it is immaterial that FedEx allowed a younger employee to stack and scan. Accordingly, the Court dismisses Lennix's age discrimination claim against FedEx.

### B. Disability Discrimination

To state a claim under the American with Disabilities Act ("ADA"), a plaintiff must establish that (1) she has a disability; (2) she is qualified for the position for which she seeks employment; and (3) she was discriminated against because of her alleged disability. *Jenkins v. Cleco Power L.L.C.*, 487 F.3d 309 (5th Cir.2007). Once the plaintiff makes this prima facie showing, the burden shifts back to the defendant-employer to articulate a legitimate, non-discriminatory reason for the action, and once the employer does so, the burden shifts back to the plaintiff to establish by a preponderance of the evidence that the articulated reason

---

[2] Although Lennix presents documentation in her Opposition that she was awarded unemployment benefits, this award does not demonstrate or prove that she was discriminated against by the Defendants. (Rec. Doc. 22, p. 5, Lennix's Opposition).

was merely a pretext for unlawful discrimination. *McInnis v. Alamo Community College District*, 207 F.3d 276 (5th Cir.2000).

Here, Lennix claims that she was discriminated against because she was "hard of hearing." (Rec. Doc. 17-2, p. 168, Lennix's Deposition). She explained this claim in her deposition by saying:

> Q: As far as your hearing, you said the only comments made about your hearing were that some people did not believe that you were hard of hearing?
>
> [Lennix's Answer]: Hard of hearing, or they would talk to me or I might be on another belt and they're screaming or something for me to come back, and I don't hear them. So they made negative comments about that or complained to the supervisor that I was ignoring them.[3]

Lennix also claimed in her deposition that the Defendants breached the ADA's confidentiality provisions:

> My disability was -- if I was to get sick or anything, it's supposed to be a HIPAA law that you're not supposed to be repeating anybody's medical health, excuses, or medical documents or whatever. That was being done. That had been done, as far as me not being there. Claiming that I can hear and I'm just ignoring them. Falsification of deafness, put it like that.[4]

However, the Court finds that Lennix was neither discriminated against nor suffered an adverse employment decision because of her alleged disability. As noted above, Lennix was relegated to only sorting because of her inability to properly scan and stack. Further, FedEx terminated her because of her disagreements with Sede' over how the belt was operated. Lastly, in regard to Lennix's breach of ADA confidentiality claim, she never presented this claim in her EEOC Charge of Discrimination. (Rec. Doc. 1-1, p. 9-11, Lennix's Charge of Discrimination). The Fifth Circuit has recognized that, if a claim or allegation was not first presented to the EEOC, the plaintiff is barred from asserting it in a subsequent lawsuit.

---

[3] (Rec. Doc. 17-2, p. 168-69, Lennix's Deposition).

[4] (Rec. Doc. 17-2, p. 117, Lennix's Deposition).

*See Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 472 (5th Cir. 2016); *Pacheco v. Mineta*, 448 F.3d 783, 788-89 (5th Cir. 2006). Thus, the Court dismisses Lennix's disability discrimination claim.

### C. Retaliation

In order to state a retaliation claim, a plaintiff must allege "(1) that [she] engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action." *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002).

Further, for retaliation claims, the Fifth Circuit has held that adverse employment actions include "ultimate employment decisions," such as hiring, firing, demoting, promoting, granting leave, and compensation. *See McCoy v. City of Shreveport*, 492 F.3d 551, 560 (5th Cir. 2007); *Alvarado v. Tex. Rangers*, 492 F.3d 605, 612 (5th Cir. 2007); *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004). "[A]n employment action that 'does not affect job duties, compensation, or benefits' is not an adverse employment action." *Pegram*, 361 F.3d at 282 (quoting *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir.2003)).

Lennix claims that the Defendants retaliated against her after she complained about the younger co-worker. She described this claim in her deposition by saying:

> [Lennix's Answer]: We had several conversations, as far as the young lady being on the belt with us, because you're working on the belt and you have other coworkers that's working hard just as well and then you have someone that's not doing the job, not performing the job, and that's a problem because the workload is on you. So all I asked was to have her help us more. She replied, Well, she's too small, she's too tiny, she can't be picking up this box and picking up this box, and she can't do this and she can't do that. So I asked her. I said, Well, we all got hired for the same thing here. Can you move her somewhere else, you know, or either can I go and scan or do something?[5]

******

---

[5] (Rec. Doc. 17-2, p. 79-80, Lennix's Deposition).

> Q: You had had a separate conversation with [Cede'] about the young lady not doing enough work?
>
> A: Yes. I wasn't the only one. This was something that was going on. This young lady had been to several belts and had the same problem.[6]
>
> ******
>
> Q: Did you ever tell [Cede'] that you thought you were being discriminated against?
>
> A: Yes.
>
> Q. When did you tell her that?
>
> A: I told her that when I said, She's been hired to do the same thing, so I feel like I'm being discriminated against because we all were hired to do the same job.[7]
>
> ******
>
> A: After I asked a question about the young lady doing more, as far as the ground side, I got moved to sorting totally. I couldn't even do the ground side anymore. They kept the young lady down on the ground and I was doing the sorting, and I asked why. They couldn't give me a reason why they kept me on sorting. I said to myself, well, maybe because I made a complaint and they didn't want me down there with her.[8]

Here, the Court concludes that Lennix never engaged in protected activity. To demonstrate that an employee participated in a protected activity, the plaintiff must first demonstrate that she filed a "complaint." *Lasater v. Texas A & M Univ.-Commerce*, 495 F. App'x 458, 461 (5th Cir. 2012). In order for an employee's communication to constitute a "complaint," the "employer must have fair notice that an employee is making a complaint that could subject the employer to a later claim of retaliation" and the "complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the [Fair Labor Standards Act] and a call for their protection." *Starnes v. Wallace*, 849 F.3d 627, 632 (5th Cir. 2017). "[N]ot all 'abstract grumblings' or vague expressions of discontent are actionable as complaints."

---

[6] (Rec. Doc. 17-2, p. 80, Lennix's Deposition).

[7] (Rec. Doc. 17-2, p. 115-16, Lennix's Deposition).

[8] (Rec. Doc. 17-2, p. 118, Lennix's Deposition).

*Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 626 (5th Cir. 2008). Here, Lennix's "complaints" were only about another employee not carrying her weight. When she complained to FedEx, she never alleged age or disability discrimination. Thus, Lennix never engaged in protected activity, and she cannot make a prima facia retaliation claim. Accordingly, this claim is dismissed.

### D.  Motion to Dismiss the Individual Defendants

Lastly, FedEx seeks to dismiss Lennix's claims against the individual Defendants Olivia Tate, Shenell Sede', and Bryan Shreckengost for failing to serve them within 120 days as provided in Rule 4(m) of the Federal Rules of Civil Procedure. Rule 4(m) provides in pertinent part:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against the defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Here, Lennix never served these Defendants, and more than 90 days have passed since the case's removal. (Rec. Doc. 1, Notice of Removal). Further, Lennix stated in her deposition that she only wanted to bring her claims against FedEx, and not against the individual Defendants. (Rec. Doc. 17-2, p. 166-167, Lennix's Deposition). Thus, the Court dismisses Lennix's claims against the Defendants Olivia Tate, Shenell Sede', and Bryan Shreckengost.

Accordingly;

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 17)** filed by the Defendant FedEx is **GRANTED**. The Plaintiff Opal Lennix's Complaint is **DISMISSED WITH PREJUDICE**.

September 11, 2020

JUDGE JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE